Good morning, counsel. Good morning. May it please the Court, Leah Spiro for Natalia Sidiakina. And, counsel, on behalf of the Court we would like to thank you for accepting this case pro bono. We really appreciate your assistance in this regard. Thank you. The district court erred by dismissing the complaint here without leave to amend based on two key oversights. First, the district court overlooked that the complaint states a facial challenge to a per se rule expressed in a written pamphlet of the state courts expressly refusing the appointment of counsel. Do we have to accept that it's a per se rule for you to be successful in that argument that you're making right now? I believe for a facial challenge it needs to be a per se rule. So let's talk about whether or not this is a per se rule. I know it's been characterized that way, but other than the pamphlet, has there been any legal authority that decided the pamphlet itself has a disclaimer saying this isn't the rules of the court, the court hasn't decided this, and the rule basically sets out that the courts will determine this on a case-by-case basis. So my main, after looking over everything, my main concern about your argument is that this has somehow been considered a per se rule. Well, both a factual and a legal point on that, Your Honor. The first is factual, and that is that while the defendants have stated that this rule is not actually binding on court judges, in footnote 10 it makes the point that state courts cannot appoint counsel as an accommodation because statutory funding is not available. And then they present several defenses as to why counsel should not be appointed in any case as an accommodation under the ADA. So that underscores the position of the state courts that appointment of counsel is not appropriate under the ADA. And then the legal point is that this is at the pleading stage. And Ms. Sidiakna has identified in her complaint a pamphlet that has been held out to be the interpretation of the rule which does not contain the express prohibition on the appointment of counsel. And I think what's really instructive here is this Court's case in Hoy v. City of Oakland, which we cite in the reply brief. And in Hoy, this Court recognized the importance of accepting a plaintiff's complaint challenge to a government's implementing policy that is invalid and that is at odds with what would otherwise be a valid rule that's on the books. And in Hoy, the City of Oakland had a bubble ordinance for abortion clinics. And on its face, the rule, the ordinance applied to both pro-life and pro-choice protesters. But the complaint alleged that it was only being imposed against pro-life protesters. And this Court recognized that challenge and said that if this Court were to ignore written or even unwritten in that case, unwritten implementing policies, then, of course, a government agency could get around its legal duty by simply having a valid rule on the books, but an invalid implementation of that rule. And this Court also described the appropriate relief which would be applicable here. And this Court instructed that the district court could grant declaratory relief, declaring that the informal implementation policy of the ordinance violated the Constitution, but that the ordinance itself did not. And that's what Ms. Sidiakna is seeking here, a declaration that a per se rule taking the appointment of counsel off the table in all instances where a litigant, a disabled litigant requests appointment of counsel would violate the ADA. Well, maybe if we break it down, it might be more helpful for me. Because under the rule, California state courts must delegate at least one person to be the ADA coordinator to address requests for accommodations. And a request may be denied only when the court makes a case-by-case assessment that certain conditions are met. The rule, I don't think, sets forth a per se rule against appointing counsel as an accommodation, or I don't think there's any specific court that's ruled on this provision. You know, you pointed us to Hoy, but I'm still trying to figure out how this nonbinding policy pamphlet published by the committee puts us into per se land. Well, I would say that all of the cases and all of the assertions made by the defendants in their brief underscore that no court has actually appointed counsel or has even entertained the idea of appointing counsel as an accommodation. And they state absolutely expressly that state courts cannot appoint counsel without funding. And that's a per se rule. If they are articulating a generalized basis on which counsel cannot be appointed and they say because there isn't statutory funding, they also make the very generalized arguments that it would be an undue economic burden and it would fundamentally alter the nature of the court systems. Those three justifications would apply to any request for counsel by any disabled litigant. And that's why it's a per se rule, because the reasons they're giving apply to anyone, and it indicates that under no circumstances do they believe that appointment of counsel would be appropriate. And I'd say even if the pamphlet isn't binding, again, this Court articulated in Hoy, that there's still importance in declaring that an implementation policy is invalid. So if the pamphlet doesn't bind the courts, it's still important to have declaratory relief expressly clarifying for the courts that this pamphlet should be removed and that courts should follow the rule itself and should not follow this policy. Kennedy. Kennedy. Okay. Can we, because you're going to run out of time, could you address the standing issue, A, because your client has already prevailed in the divorce court, apparently, and so I think you are asking leave to amend basically based on your reply brief. Absolutely. So can you explain how your reply brief proffer would give you standing? First of all, standing was raised for the first time on appeal. Well, it can be raised. It can be raised. But I think this Court has remanded it in any instance where there is a chance that the plaintiff could amend to allege standing, and this Court has only denied leave to amend where the record already indicates. No, I understand that. But your reply brief proffers what appears to be your allegation to support standing. My problem with it, to be specific, is since you wouldn't be relying on her lack of access to the divorce court, because that's now been mooted, she is seeking to establish standing on enforcement of the divorce decree that she got, and I don't know whether she got it on her own. It suggests that she has not been excluded from the court system, and it's an enforcement action to enforce a decree that she already has. And if how do we establish standing on an allegation that she expects to seek to enforce the decree, but then assume that she can't go ahead and enforce it without counsel? In other words, the harm is that she is excluded from the courts, but she's seeking to enforce a decree that she got without counsel. And so why, on the face of it, would she have standing on a reasonable and imminent injury traceable to the policy when it's not clear that she would in fact be adversely affected by the policy? Well, a few points on that, Your Honor. The first is that I found out from Ms. Sidiakna yesterday that her ex-husband's attorney has given her notice that they have set hearings for the beginning of next year in the state court because her ex-husband would actually like to modify and enforce certain orders. And so it is clear that she will be returning to state court. And then as to why she has shown that the denial of counsel affects her, that's because it's not that she has not had access to courts. It's that she has not been able to be an effective representative of herself. And the main issue here is that the ADA requires a reasonable accommodation unless the State can justify its denial of that accommodation on one of the defenses. And here it would be a reasonable accommodation to give her appointment of counsel because as she's substantiated, her IQ drops to the bottom, her cognitive functioning drops to the bottom 2% of the population at hearings. So the real issue here is at hearings, and she has to go to a hearing in the new year based on her husband trying to enforce something in the divorce court. But I think more importantly, this is a facial challenge. And so Ms. Sidiakna, although she needs to show standing, I think her own personal issues of why she needs counsel as an accommodation are really irrelevant to the facial analysis of the rule. But she has to have a stake in the outcome, and you addressed that. So her stake is that she will have to return to court for these two years. I say you've addressed that, so I don't want to use that. Counsel, could you address the Rooker-Feldman issue? Absolutely. So Rooker does not apply here, and the district court actually never said that it would apply to a facial challenge for prospective relief. Well, was it really a facial challenge? It appeared that she was more concerned about her individual case as opposed to a facial challenge. She would readily admit that most of the complaint was aimed at undoing her State Court proceedings, and those claims are barred. But under Feldman, the fact that she stated a facial claim, that facial claim can still survive even if, as the Supreme Court said it, the sum and substance of the rest of her complaint was directed at undoing the State Court proceedings. And now at Excerpts of Record 128, she has a standalone paragraph, paragraph 8, asking the court to render a ruling whether the State Court rule plus the pamphlet interpreting the rule violates the ADA. And then at Excerpts of Record 130, she asks for prospective relief. So this is a facial claim for prospective relief that is not barred by the Rooker-Feldman doctrine. Now, it just seems like it's really intertwined with her own request that for her own proceedings, she be appointed an attorney. Well, here's why it's not. Because the district court would only need to look at the per se rule, the rule saying counsel will not be appointed as accommodation, and decide whether that per se rule on its face violates the ADA. It doesn't need to see how that rule was applied to Ms. Sidiakna. And also because she's asking for a declaration that that rule violates the ADA, that's prospective. That will not undo her State court denial of counsel, which is over and done with. She was already denied counsel. That decision is final. And prospective relief would not undo that, so the Rooker-Feldman doctrine does not bar it. I see that I'm near the end of my time, and I'd like to reserve the remainder for rebuttal. Thank you, counsel. Thank you. Please proceed, counsel. May it please the Court. My name is Robert Nave, and I'm appearing on behalf of the judicial defendants and the appellees here. I'm not the first person, but I'll be the second, to thank the Court's clerk for being very helpful in making sure that everyone got here today. It was just beyond the call of duty, so thanks to the Court's clerk. We appreciate that. We know we have a wonderful staff, but it's nice to hear it reinforced. Thank you for those comments. Your Honors, if you step back and look at this, the question in this case is whether the Rooker-Feldman doctrine applies, and what does the Court make of this allegation that is peppered through some of the document that there's this pamphlet? And the best way to do it is to follow what Judge Fletcher suggested in the Bianchi case, which is cited all through the briefs. And what he says is that one way to determine whether a claim is inextricably intertwined with a forbidden horizontal or de facto appeal is to ask whether there would be independent standing to assert that claim once the independent appeal is removed, and that's in footnote 3, and he's citing the Fascio case, which I'll get to in a moment. So in this case, what was Ms. Sidiaquina's standing answered? The trial courts and the appellate courts in California didn't grant her request for appointment of counsel. She has one paragraph in her prayer. It's paragraph M, and I think it's – if I can find the cite for you just so that you've got it. She claims to be damaged. Her only damage claim is the record at 126 and 127, paragraph M. She says she's damaged because she couldn't represent herself in those proceedings. And then she asks that everything be reversed. Well, okay. Her damage is the fact that she didn't have a lawyer in those proceedings. That's the forbidden de facto appeal. Once you remove that, what's left? Opposing counsel says there's a challenge to a per se policy of denying appointment of counsel to – in response to a disability. So what's your – what's your response? The response, Your Honor, is that that claim is the only damage that arises from that alleged policy in this case is that they need to appoint counsel. And past that, if you're going to have a facial challenge, you still have to have standing to sue. And I would direct the Court's attention to the Fascio v. Jones case, the Tenth Circuit case that this Court has relied on in a number of occasions, and some other cases that we've also cited in our brief, which stand for the proposition that Feldman, the case that this theory is relying on, wasn't a standing case. In Feldman, it was two lawyers who were trying to be admitted to the D.C. Bar, and there was a ruling by the D.C. Court of Appeals that said, well, you went to the wrong law school. Well, they had a continuing interest in practicing in front of the D.C. Bar. So even though in that case there was standing, but there was no discussion of standing. And so what the Fascio v. Jones Court says, and it's – let's see. In other words, even though the individual State court decision stood against them, they each had an interest in practicing law in the State courts involved and therefore had standing to assert restrictive bar admission that would be declared unconstitutional against them in the future. So they've got another chance. In this case, the divorce proceedings ended in 2011. It is now 2014. Today, is there anything pending in State court that I know of? And the answer is no. Today, do we have any understanding that there's going to be some kind of real dispute between the parties that will require judicial intervention? Well, she submits that there's a – I mean, there's a declaration that she's going to have to go back. And is that enough? I would respectfully submit no, Your Honor. Under the L.A. and Lyons case and in Lujan, all of the Supreme Court standing precedent, the fact that something maybe might sort of happen in the future is not enough to show injury in fact today. That doesn't mean, to be clear, that doesn't mean that if all of those contingencies occur, if she goes to court, if she makes an application, if the application is correct, by the way, if the judge rules on the basis of this pamphlet, which is not law of the State of California, which is even in – which is not conceded, certainly, and if then at that point she is denied counsel, does she have a claim then that she can pursue pursuant to Rule of Court 1.100? The answer is yes. She can take a petition of written mandate up to the California court of appeal. She has a right to raise all of these issues about whether there is a per se policy or not, which there is not. But that doesn't mean that today, before any of those things happen and before any of these contingencies are satisfied, that she has standing to assert a general claim. You still have to have standing here. And she doesn't have it apart from the forbidden injury from the – that's covered by Rupert Feldman. So from our standpoint, it's a pretty straightforward case. One, absolutely, whether you want to call it de facto, as Judge Fletcher does, or I think better, horizontal, as Judge McAllen does, you haven't that. You have one of those appeals because there's an express request that the Federal Supreme Court put it in footnote 16 of Feldman, because they all relate to that claim. It's as simple as that. In terms of amendment, there's nothing at this point. First off, the request to amend wasn't addressed to the trial court. But even if it was, today, there's no standing for that. So that's a futile investigation. So, look. Kennedy. She didn't ask for – if we were to find that Rupert Feldman was applied wrongly to this one facial claim, accepting it as such, why wouldn't it be appropriate for her to remand to the district court to give her leave to amend, to establish standing, to assert that one remaining facial claim based on the status of the divorce proceeding being admittedly off-limits, that she wouldn't be seeking to impeach or appeal the state court judgment, but that she would be alleging what you say she could bring in the state courts as a new claim, that is, that she's being adversely affected by this rule, even though it's a – and it's related, as it turns out, to the divorce decree, but the enforcement of it. Why couldn't she allege that and let the district court address that? The district court already addressed it, Your Honor. In its alternative ruling, the district court said, look, I don't have subject matter jurisdiction, but even if I did, this is not a violation of the ADA for pretty much everything Judge Bergia was questioning of opposing counsel. The pamphlet – the rule itself is just absolutely not a per se rule. By the way, all of the decisions that we've cited to you where the courts reserve are pretty clear, we're not saying never, but we're saying on this case, on these facts, there's a – there's no counsel. Now, I understand that, but he addressed that on a pleading stage, and there is the allegation that it is a per se rule. Now, you're saying, well, it isn't. That may be your defense, that may be summary judgment, but on the face of it, as a pleading matter, why isn't there a plausible facial claim to be made? Because it is a legal – essentially making a legal conclusion that California law, policy, or anything has an express, across-the-board prohibition for appointment of counsel. And you're not, as a trial court or this Court, obligated to accept an erroneous legal conclusion. It is erroneous. Kennedy. There is the pamphlet which says we do not appoint counsel. And the pamphlet says this is not a policy of the State of California. The pamphlet was written in 2007, and the cases we've cited to you are all since 2007. If you look, for example, at the Michael and Christina C. case, the Court expressly says, you know, one thing you ought to consider is, when we send this back down, is appointment of counsel. If you look at the Dorn and Blatt's case, that case says we're not saying that there is a per se rule against appointment of counsel, we're just saying it here. Really, what we're saying, what opposing counsel wants to suggest is the fact that there are individual case-by-case determinations based on the facts of particular cases turns individual, you know, facial challenges, I guess, or individual as-applied challenges into a general rule. That's mixing, you know, horribly mixing and maxing concepts, it seems to me. And it's your response to counsel's argument that because of the finances of California, everybody's denied, and so, therefore, that makes it per se. Again, it depends on the facts of the case, and it's not a uniform rule anyway. It's cited in both briefs that there are a number of cases where the California legislature has specifically said you can appoint counsel. It's also cited in the materials that there are now pilot projects to deal with this precise issue. So on a case-by-case basis, can counsel be appointed? Yes. Even in those cases where counsel can't be appointed on the and paid for doesn't mean that the Court can't assist, as this Court did, in attempting to find pro bono counsel. So there just isn't a per se rule against it. And, frankly, for the reasons that Rule 1.100 is so limited, and it's entirely designed to make sure that there's access to justice by individuals with disabilities, that there's a very limited number of things that one can do to deny. And the courts do what they can to make sure that access to justice is granted, otherwise there wouldn't be a rule. So if there are no further questions, thank you very much. Is there a counsel rebuttal? Just a few points, Your Honors. The defendants take a very troublesome position on appeal, and that is that they allege there is no per se policy to actually challenge. But at the very same time, everything that they've submitted underscores that the state courts are not appointing counsel as an accommodation, and we are at the pleading stage. And so everything in the record so far points toward the fact that there is a policy. And that's enough to go forward on this facial challenge. The rest of the points that were made by the defendants on appeal are really premature, because, again, the standing issue is best addressed by the district court. There are factual issues there. There's the new evidence that Ms. Siddiakina is going to have to return to state court because of her ex-husband setting hearings, which is precisely where her disability comes into play and where she is unable to effectively represent herself. And then all of the defenses under the ADA, it is a factual issue whether appointment of counsel is reasonable under the ADA. It's a factual issue whether it's economically burdensome. It's a factual issue whether it fundamentally alters the nature of the court system. And there are reasons to believe the state can never meet those defenses. But at this early stage of the proceedings, they certainly are not legally dispositive to bar Ms. Siddiakina's claim. So I would ask that you reverse and remand for further proceedings and direct for the appointment of counsel so that Ms. Siddiakina can fully and fairly litigate her facial challenge. All right. Thank you, counsel. Thank you to both counsel. Again, we appreciate the pro bono efforts on behalf of the court. This case is submitted for decision by the court. That completes our calendar for the day and for the week. We are adjourned.
judges: Fisher, Rawlinson, Murguia